Zenia **CHAVARRIA**, individually, and on behalf of other members of the general public similarly situated, Plaintiff,

v.

**RALPHS GROCER COMPANY**, an Ohio corporation, Defendants.

Case No. CV 11–02109 DDP (VBKx).

United States District Court, C.D. California.

Sept. 15, 2011.

Mark Yablonovich, Neda Roshanian, Michael Damon Coats, Mark Yablonovich Law Offices, Los Angeles, CA, for Plaintiff.

Linda S. Husar, Mara D. Matheke, Steven B. Katz, Reed Smith LLP, Los Angeles, CA, for Defendants.

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS; AND TO DISMISS OR STAY ACTION**

DEAN D. PREGERSON, District Judge.

In March 2011, Zenia Chavarria ("Plaintiff") brought suit individually and on behalf of others similarly situated against her employer, Ralphs Grocery Company ("Ralphs"). Plaintiff alleges various wage and hour violations of California law and seeks compensation for unpaid wages. (Compl. ¶¶ 30–88.) Ralphs now brings a Motion to Compel Arbitration on an Individual Basis and to Dismiss or Stay Action under the Federal Arbitration Act ("FAA"). (Dkt. No. 6.)

Having read the parties' papers, considered the arguments therein, and heard oral argument, the court concludes that the arbitration agreement Ralphs seeks to enforce is procedurally and substantively unconscionable, and DENIES Ralphs' motion.

## I. Background

On September 22, 2008, Plaintiff applied for a job at Ralphs. To that end, she completed and signed Ralphs' employment application (the "Employment Application" or "Application"). (Def.'s Motion, Ex. 1, Employment Application.)

The Employment Application includes a paragraph stating that Ralphs has a Dispute Resolution Program. The Application states that the prospective employee agrees that the "Dispute Resolution Program [ ] includes a Mediation & Binding Arbitration Policy (the 'Policy')," which is "incorporated into this Employment Appli-

cation by this reference as though it is set forth in full ...." (Def.'s Motion, Ex. 1, Employment Application.) The Employment Application concludes with language stating that the applicant has either "received a copy of the Policy or one has been made available to [her] through the Company's Director of Personnel & Benefits, 1100 West Artesia Boulevard, Compton, CA 90220 ...."

At some point after September 22, 2008, Plaintiff was interviewed and hired by Ralphs.[1] On October 14, 2008, at a new employee orientation attended by Plaintiff, Plaintiff wrote her initials on a form, which acknowledged receipt of twenty-two different forms and manuals. (Decl. Cotes, Ex. A.) Included in that list was an acknowledgment of receipt of the full terms of the "Mediation & Binding Arbitration Policy" (i.e. the "Arbitration Policy" or the "Policy").

The Policy is four single-spaced pages long and provides, *inter alia:*

> **Policy Preamble, 1., 2., & 4. *All* employment and pre-employment disputes including civil rights claims, harassment claims, and wage and hour claims will be arbitrated**[2]
>
> [T]his Arbitration Policy is the exclusive mechanism for formal resolution of disputes and awards of relief that otherwise would be available to Employees or the Company in a court of law or equity or in an administrative agency.
>
> ...
>
> Covered Disputes are employment-related disputes ... which involve the interpretation or application of this Arbitration Policy, the employer/employee relationship, an Employee's actual or al-

1. Neither Ralphs nor Plaintiff provided the court an exact date of hire.

2. The court uses the Policy's numbering for ease of reference. The headings are the court's own. The excerpts below the headings are from Ralphs' Arbitration Policy. (*See* Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy.)

leged employment with Ralphs ..., the termination of such employment, or applying for or seeking such employment.
...

Covered Disputes include, for example and without limitation, disputes having anything to do with the interpretation or application of this Arbitration Policy ..., and disputes, claims or causes of action for unfair competition, unfair business practices ... fraud, breach of contract, injunctive relief, unlawful harassment, unlawful discrimination, unlawful retaliation, failure to provide reasonable accomodation(s), unpaid wages or failure to pay overtime or other compensation (or the computation thereof), failure to provide family or medical (or other required) leave, failure to consider for hiring, failure to hire for employment and actual or constructive termination of the employment relationship. Covered Disputes ... [also] include all Employee's individual statutory claims or disputes under federal, state and local laws including, for example and without limitation, any claims or disputes arising under the California Fair Employment and Housing Act; ... the Civil Rights Act of 1964; the Americans With Disabilities Act; the Age Discrimination in Employment Act; the Family Medical Leave Act; the California Family Rights Act; the California Labor Code ...; the Fair Labor Standards Act; the Employee Retirement Income Security Act; ... and the United States Code, as enacted and amended.

**3. Jury trial waiver**

*There are no judge or jury trials permitted under this Arbitration Policy.* The Company [i.e. Ralphs] and Employees waive any right that they have or may have to a judge or jury trial of any Covered Disputes ....

**7. The arbitrator *must* be a retired federal or state judge, and the arbitrator may not be an organization such as JAMS or AAA**

[T]he 'Qualified Arbitrator' must be a retired state or federal judge ... from the state jurisdiction or federal jurisdiction in which the Covered Dispute(s) arose or will be arbitrated.

...

[N]either the American Arbitration Association ("AAA") nor the Judicial Arbitration & Mediation Service ("JAMS") will be permitted to administer any arbitration held under or pursuant to this Arbitration Policy.

**7. Selection of an arbitrator: Ralphs will always select the arbitrator for any employee-initiated dispute, absent mutual agreement to the contrary**

If the parties do not mutually agree on the selection and appointment of a Qualified Arbitrator, the following selection method will be used to select and appoint a Qualified Arbitrator: (1) Each party to the arbitration proceeding will propose a list of three Qualified Arbitrators that they want appointed to hear and decide the Covered Dispute(s); and (2) The parties will alternate in striking one name from any other party's list of proposed Qualified Arbitrators, with the first strike to be made by a party who has not demanded arbitration pursuant to this Arbitration Policy, followed by a continuing rotation of alternating adverse parties until there is only one proposed Qualified Arbitrator that has not been stricken, who will be deemed to be the parties' selected and appointed Qualified Arbitrator to hear and decide the Covered Dispute(s) that are the subject of the arbitration proceedings.

**8. Discovery**

[T]he parties will have the right to conduct normal discovery and to bring

motions, as provided by the [Federal Rules of Civil Procedure].

. . .

### 8. Class action waiver

[T]here is no right or authority for any Covered Disputes to be heard or arbitrated on a class action basis, as a private attorney general, or on bases involving claims or disputes brought in a representative capacity on behalf of the general public

. . .

### 9. The Policy trumps any longer statutory statute of limitations

In the event that the applicable statute of limitations period as provided under governing law is longer than one year . . . [Ralphs] and Employees agree that the applicable state of limitations period is shortened to one year.

10. **Each party must bear their own attorney's fees.[3] The Arbitrator's fees and any arbitration fees must be allocated and paid "up front" before evidence is received. Any fee dispute is resolved by the Arbitrator, but the Arbitrator is stripped of any authority to allocate fees other than 50/50 absent "settled" authority coming *only* from the Supreme Court. The decisions of all inferior courts are to be disregarded.**

Each party to the arbitration will pay the fees for his or its own attorneys, subject to the remedies to which that party may later be entitled under applicable law. Ralphs . . . in all cases where required by settled and controlling legal authority will pay up to all of the Qualified Arbitrator's and arbitration fees, as apportioned by the Qualified Arbitrator

at the outset of the arbitration proceeding . . . . In all instances in which there is a dispute over the apportionment of the . . . arbitration fees, such dispute is a Covered Dispute under this Arbitration Policy which must be resolved by the Qualified Arbitrator, who must apply and follow only decisions of the United States Supreme Court in resolving such dispute . . . . In the event settled and controlling [Supreme Court] legal authority does not require that one party or another bear a greater share of the Qualified Arbitrator's or arbitration fees, such fees will be apportioned equally between each set of adverse parties.

(Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy.)

From October 2008 to March 2009, Plaintiff worked for Ralphs in Los Angeles as a Service Deli Clerk. (Compl. ¶ 17.) Plaintiff's regular duties included preparing and roasting rotisserie chicken, preparing sandwiches, maintaining food safety standards, and keeping the service deli area clean. (*Id.*)

In March 2011, Plaintiff brought suit against Ralphs for failure to pay Plaintiff overtime compensation, failure to pay Plaintiff for meal and rest periods during which she worked, and failure to provide complete and accurate wage statements in violation of the California Labor Code. (*Id.* ¶¶ 21–22.) Plaintiff seeks relief on behalf of herself and others similarly situated, and she argues that the Arbitration Policy is unenforceable as unconscionable and that the Policy's class action waiver violates the National Labor Relations Act and California law. Ralphs moves this court to

---

3. This clause contains a provision stating that it is subject to "any remedies to which that party may later be entitled under applicable law." It is unclear what is meant by "later" because the Arbitrator is not granted authority to address issues involving whether attorney's fees must be paid to the prevailing party and, if so, in what amount. "Later" may mean in a court of law.

compel individual arbitration. (Def.'s Motion 2:9–21.)

## II. Legal Standard

Under the FAA, 9 U.S.C. § 1 *et seq.*, a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the court for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4; *see e.g. Stirlen v. Supercuts, Inc.*, 51 Cal. App.4th 1519, 1526–27, 60 Cal.Rptr.2d 138 (1997) (considering a motion to compel arbitration). In considering a motion to compel arbitration, the court must determine whether there is a duty to arbitrate the controversy, and "this determination necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." *Stirlen*, 51 Cal. App.4th at 1527, 60 Cal.Rptr.2d 138. The determination of the validity of an arbitration clause, which may be made only "upon such grounds as exist for the revocation of any contract," is solely a judicial function. *Id.* (internal citation omitted).

If the court is satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not at issue, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 3. The FAA reflects a "federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

## III. Discussion

Plaintiff signed Ralphs' Employment Application on September 22, 2008. (Vega Decl. ¶ 4.) That Application contained a requirement to resolve disputes through Ralphs' Dispute Resolution Program, which includes an Arbitration Policy. Ralphs now moves this court to compel Plaintiff to arbitrate her wage and hour violation claims on an individual basis. Plaintiff argues that Ralphs' Arbitration Policy is procedurally and substantively unconscionable and, therefore, unenforceable. The court agrees.

Unconscionability has generally been recognized to include (1) an absence of meaningful choice on the part of one of the parties and (2) contract terms which are unreasonably favorable to the other party. *Stirlen*, 51 Cal.App.4th at 1531, 60 Cal.Rptr.2d 138. Put another way, unconscionability has a "procedural" and "substantive" element. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir.2007).

California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669, 690 (2000)). Both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, but they need not be present to the same degree. *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406, 7 Cal. Rptr.3d 418 (2003).

### A. Procedural Unconscionability

Procedural unconscionability focuses on the factors of surprise and oppres-

sion, "with surprise being a function of the disappointed reasonable expectations of the weaker party." *Harper*, 113 Cal. App.4th at 1406, 7 Cal.Rptr.3d 418.

■ Here, Plaintiff was required—in order to complete the Employment Application and apply for a job at Ralphs—to agree to the terms of Ralphs' Arbitration Policy. The Employment Application states at its top that by signing the Application, the Applicant acknowledges that she has "read, understood, and agree[d]" that the Arbitration Policy is incorporated into the Application. The Application further states in small type that the prospective employee has "received a copy of the Policy *or* one has been made available" to the employee at the Company's Director of Personnel and Benefits, located at a physical address in Compton, California. (Def.'s Motion, Ex. 1, Employment Application (emphasis added).)

The actual terms of the Arbitration Policy were first provided to Plaintiff at a new employee orientation more than three weeks after she signed the Employment Application—i.e., *after* she was hired and *after* she had agreed to arbitrate all future disputes with Ralphs.

Ralphs' position in structuring the Application as it did appears to be that a prospective employee can be compelled to arbitrate pre-employment hiring disputes,[4] and that making the terms of the Arbitration Policy "available" at some other location is the equivalent of physically handing an applicant the terms. The court disagrees.

Here, the Policy was not provided to Plaintiff until after she had already agreed to be bound by it. For this reason, the court finds that Plaintiff was reasonably "surprised" by the terms and conditions of Ralphs's Arbitration Policy. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996–97 (9th Cir.2010) (holding that arbitration agreements were unconscionable where, among other factors, the full terms of those agreements were not attached to the agreement).

■ Further, the Policy was presented to the Plaintiff on a take it or leave it basis.

An agreement or any portion thereof is procedurally unconscionable if 'the weaker party is presented the clause and told to take it or leave it without the opportunity for meaningful negotiation.' Thus, we have said that a contract is procedurally unconscionable under California law if it is 'a standardized contract drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'

*Id.* at 996 (internal citations omitted).

Ralphs required Plaintiff to accept the "available" Arbitration Policy not only as a condition of employment, but as a condition of Plaintiff's *application* for employment. Plaintiff could not even present herself for consideration without first acceding to the terms of the Policy. There is, therefore, no question that Ralphs is the party of superior bargaining power, or as described in *Pokorny*, the "stronger" party. *Id.* (explaining that in assessing procedural unconscionability, the court must consider "whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate"). Indeed, describing Ralphs' bargaining power here as simply "stronger" than or "superior" to Plaintiff's

---

4. Although not raised here, the court questions whether, in circumstances such as those here, an Applicant has received consideration in exchange for waiving all potential claims, including those involving discrimination, arising from the hiring process.

belies the total imbalance between the parties' relative positions. Ralphs does not have merely superior or stronger bargaining power, it has all of the bargaining power.

Accordingly, because the Policy was presented as "take it or leave it," the Policy is procedurally unconscionable.[5] Additionally, because the Plaintiff was not given the opportunity to review the full Policy before she was hired, this additional defect acts to "multiply" the degree of procedural unconscionability.[6] *See Id.* at 997 (explaining that the defendant's failures, including failure to supply the plaintiff with the full terms of the binding arbitration process, "multiply the degree of procedural unconscionability of the ADR agreements").

## B. Substantive Unconscionability

Substantive unconscionability focuses on the one-sidedness of the contract terms. *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 690. "Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.' " *Ting,* 319 F.3d at 1149 (citing *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 692). Put another way, the doctrine of substantive unconscionability limits "the extent to which a stronger party may . . . impose the arbitration forum on the weaker party without accepting that forum for itself." *Id.* The court finds the Policy is substan-

tively unconscionable for the reasons below.

First, the court finds the method devised by Ralphs to select a "qualified arbitrator" to be a sham. (*See* Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶ 7.) If the parties do not mutually agree on an arbitrator, an arbitrator will be selected according to the following procedure: (1) Each party will propose three arbitrators; (2) the parties will alternate in striking one name from a the other party's list of proposed arbitrators until one arbitrator is remaining; and (3) the first strike will be made by the party who has not demanded arbitration pursuant to the Arbitration Policy. (*Id.*)

In *every* instance in which an employee seeks arbitration, the employee will strike second and, therefore, will strike two of Defendant's proposed arbitrators in the time that Defendant strikes all three of the employee's arbitrators.[7] The end result is that the "last arbitrator standing" will *always* be one of the three proposed by Ralphs.

Defendant argues that this provision is not one-sided because "one party or the other must strike first" and "either party is free to demand arbitration and thereby secure the right to strike second." (Def.'s Reply 16:21–24.) As illustrated above, the "right" to "strike second" is not much of a "right" at all. Furthermore, the court is not persuaded that Ralphs is equally likely

---

5. The fact that the Policy is characterized by Ralphs as its "policy" is also notable. An "agreement" carries with it at least the theoretical opportunity to negotiate. A "policy," in contrast, suggests a firm set of established procedures and, implicit therein, a reduced openness to negotiation.

6. As discussed above, the fact that the Policy was theoretically "available" at some other physical location is not an adequate substitute for disclosure of the actual terms of the Policy.

7. Suppose, for example, that Ralphs lists Arbitrators A, B, and C, and an employee lists Arbitrators 1, 2, and 3. Ralphs strikes first, and eliminates Arbitrator 1. The employee goes next, striking Arbitrator A. Ralphs then proceeds to strike Arbitrator 2. The employee then eliminates Arbitrator B from consideration. Ralphs then strikes Arbitrator 3. At that point, Arbitrator C, chosen by Ralphs, is the last arbitrator standing, and is therefore selected. The employee does not have the opportunity to exercise his third strike.

as one of its employees to request arbitration. Ralphs is the employer of at will employees. The Policy governs claims that are overwhelmingly likely to be raised by an employee—not by an employer. Ralphs is unlikely to bring a claim against its employee for, for example, unfair competition, unfair business practices, unlawful harassment, unlawful discrimination, unlawful retaliation, unpaid wages or failure to pay overtime or other compensation, failure to consider for hiring, failure to hire, violation of the California Fair Employment and Housing Act, violation of the Civil Rights Act of 1964, or violation of the American with Disabilities Act, all of which must be arbitrated under the terms of the Policy. (*See* Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶ 4.)

The Policy's provisions regarding the eligibility of potential arbitrators also raise fundamental unconscionability concerns. Under the terms of the Policy, paragraph 7, "the 'Qualified Arbitrator' must be a retired state or federal judge," … "and neither the American Arbitration Association ("AAA") nor the Judicial Arbitration & Mediation Services ("JAMS") will be permitted to administer any arbitration held under or pursuant to this Arbitration Policy." (Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶ 7.) By eliminating the ability of an institutional arbitrator to serve, Ralphs eliminates any uncertainty concerning the selection of the ultimate arbitrator. The AAA, for example, has its own process for selecting a neutral arbitrator when the parties disagree.[8] Further, institutional arbitrators are less likely to be influenced by a well-paying repeat party, such as Ralphs, than are hand-picked individual arbitrators who stand to benefit from Ralphs' frequent patronage. In short, the Policy's restrictions mandating private, individual arbitrators outside the AAA and JAMS organizational framework, coupled with the arbitration selection "process," ensure that the arbitrator will be a person selected by Ralphs.

These consequences are compounded by the fact that under paragraph 10 of Ralphs' Arbitration Policy, the arbitrator apportions the arbitration and arbitrator's fees between the parties at the outset of the arbitration proceedings and before the introduction of evidence, regardless of the merits of the claim. The default allocation is a fifty-fifty fee split. In the event of a dispute regarding the apportionment of fees (which is almost universally the case), the arbitrator is empowered to resolve the dispute only if there is settled and controlling United States Supreme Court authority requiring a particular resolution. Authority from any other court, no matter how relevant, is barred from consideration. In the absence of a specific United States Supreme Court mandate for a particular resolution, the arbitrator "will" divide the fees equally between the parties.[9] (Def.'s

---

**8.** The court takes judicial notice of AAA's Employment Arbitration Rules and Mediation Procedures. If the parties to a AAA arbitration are unable to agree upon an arbitrator, AAA provides:

> [E]ach party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA…. From among the persons who have been approved on both lists … the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any reasons the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists."

**9.** The court rejects Ralphs' assertion that a purported savings clause in any way alleviates the economic fairness issues raised by the Policy's fee structure. The Policy merely states that Ralphs will pay a higher share of fees "where required by settled and controlling legal authority." (Def.'s Motion, Ex. 2,

Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶ 7.)

The above Policy provision is a model of how employers can draft fee provisions to price almost any employee out of the dispute resolution process. At the hearing on August 29, 2011, the court inquired of Ralphs as to the fees charged by the arbitrators employed by Ralphs. Ralphs estimated those fees to range from $7,000 to $14,000 *per day.* Plaintiff worked at a Ralphs service deli for five months. She claims she was not paid for rest and meal breaks during which she worked. Her monetary claims likely total well under ten thousand dollars. Assuming a two day arbitration, Plaintiff would be required to pay somewhere between $7,000 and $14,000 in arbitrator's fees alone. She also faces the prospect of being required to pay those fees before she has any opportunity to present her case. Nor is there any guarantee that Plaintiff will be able to resolve her claim in a matter of days. As set forth in paragraph 8, the parties are permitted to conduct discovery and bring motions. Under these conditions, Ralphs, as the economically stronger party, would have the ability and incentive to file numerous pre-hearing and post-hearing motions before the arbitrator, thus forcing a plaintiff to incur additional fees that she could ill afford to pay.

By way of contrast, Plaintiff's filing fee in the present action, filed in federal court, was $350.[10] The fee to file a complaint in California Superior Court is roughly the same.

The Policy's fee allocation structure creates a substantial economic barrier to justice. The terms of the Policy therefore defeat the very purpose of arbitration as an alternative dispute resolution system and method of preserving private and judicial resources. It is well settled that one of the fundamental purposes of resorting to arbitration is to reduce the *cost* and delay of litigation. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 479–80, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (explaining that the Arbitration Act strongly favors the enforcement of agreements to arbitrate as a means of securing economical solution of controversies). When, as here, "the potential for individual gain is small, very few plaintiffs, if any, will pursue individual arbitration," reducing the aggregate liability an employer faces and effectively closing the arbitration doors. *Shroyer,* 498 F.3d at 986; *see also Kaliroy Produce Co., Inc. v. Pacific Tomato Growers, Inc.,* 730 F.Supp.2d 1036, 1041 (D.Ariz.2010) (internal citation omitted).

## IV. Conclusion

Our legal institutions depend on legitimate process and the real possibility for redress. Federal policy strongly encourages arbitration that is "prompt, economical, and *adequate." A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1404 n. 2 (9th Cir.1992) (quotation marks omitted) (emphasis added). The Ralphs Policy is not economical or adequate. Arbitration is intended to be a fair and effi-

---

Mediation & Binding Arbitration Policy ¶ 10.) First, a plaintiff's reasonable fear of incurring thousands of dollars in fees is unlikely to be assuaged by the mere possibility that some unknown legal authority *might* allow the plaintiff to avoid those fees. Second, the question whether any such authority is sufficiently "settled and controlling" will often give rise to disputes over apportionment, which, under the terms of the Policy, may

then only be settled by the arbitrator with reference to a Supreme Court decision. In the absence of a Supreme Court decision precisely on point, the fees "will" be split fifty-fifty.

**10.** Plaintiffs who are unable to pay this filing fee may move to file *in forma pauperis.* C.D. Cal. L.R. 5–2.

cient means of resolving disputes, not a sham having no "modicum of bilaterality." *Ting*, 319 F.3d at 1149. Ralphs' arbitration policy lacks any semblance of fairness and eviscerates the right to seek civil redress, rendering it a right that exists in name only. To condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our system of justice.

Because the Arbitration Policy is both procedurally and substantively unconscionable, Defendant's Motion to Compel Arbitration on an Individual Basis; and to Dismiss or Stay Action is DENIED.[11]

IT IS SO ORDERED.

**11.** Because the court finds the Policy unconscionable, the court does not proceed to consider Plaintiff's alternative argument under the National Labor Relations Act and *Gentry v. Superior Court,* 42 Cal.4th 443, 463, 64 Cal.Rptr.3d 773, 165 P.3d 556 (2007).