Filed 8/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHANIE CRUISE, | B248430 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC489042) |
| v. | |
| KROGER CO., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge.  Reversed with directions.

Littler Mendelson, Jeremy A. Roth, Henry D. Lederman and Emily T. Patajo for Defendants and Appellants.

The Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiff and Respondent.

────────────────

Defendants and appellants Kroger Co., Kroger Manufacturing, Compton Creamery, Keith Oldenkamp, Steve Kuebbing, Jesse Turner, Keith Henry, Jill McIntosh and Tony Ramirez (sometimes collectively referred to as Kroger or the Kroger defendants) appeal an order denying their motion to compel arbitration of an employment discrimination action filed by plaintiff and respondent Stephanie Cruise (Cruise).[1]

At the time Cruise applied for employment with Kroger in 2007, she completed an employment application which contained an arbitration clause requiring arbitration of employment-related disputes. The employment application also incorporated by reference Kroger's Mediation & Binding Arbitration Policy (Arbitration Policy or Policy).

The trial court denied Kroger's motion to compel arbitration, ruling that Kroger failed to meet its burden to prove the existence of an arbitration agreement. The trial court was not persuaded the undated four-page arbitration policy attached to Kroger's moving papers was extant at the time Cruise read and signed the employment application, and that it was the same Arbitration Policy to which the employment application referred.

We conclude the arbitration clause in the employment application, standing alone, is sufficient to establish the parties agreed to arbitrate their employment-related disputes, and that Cruise's claims against Kroger fall within the ambit of the arbitration agreement. The only impact of Kroger's inability to establish the contents of the 2007 Arbitration Policy is that Kroger failed to establish the parties agreed to govern their arbitration by procedures different from those prescribed in the California Arbitration Act (CAA) (§ 1280 et seq.). Therefore, the arbitration is to be governed by the CAA, rather than by the procedures set forth in the employer's Arbitration Policy. Accordingly, the order denying the motion to compel arbitration is reversed with directions to grant the motion.

---

[1] An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Reyes v. Macy's Inc.* (2011) 202 Cal.App.4th 1119, 1122.)

All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Events preceding litigation.*

On October 20, 2007, Cruise completed and signed an employment application for the position of Human Resources Assistant Manager at Compton Creamery & Deli Kitchen, and appeared for an interview at that location.

The employment application included the following provision, which Cruise separately initialed, and which stated in relevant part:  "<u>MANDATORY FINAL & BINDING ARBITRATION:</u>  I acknowledge and understand that the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy (the 'Policy') applicable to all employees and applicants for employment . . . .  I acknowledge, *understand and agree that the Policy is incorporated into this Employment Application by this reference as though it is set forth in full*, that except for claims or disputes arising out of the terms and conditions of any applicable CBA [collective bargaining agreement] ('Excluded Disputes') the Policy applies to any employment-related disputes that exist or arise between Employees and the Company or 'Compton Creamery' (as defined in the Policy) that would constitute cognizable claims or causes of action in a court or government agency under applicable law including individual statutory claims or disputes ('Covered Disputes'), that Covered Disputes are such claims or disputes that have to do with an Employee's seeking, attempted, actual, or alleged employment with the Company or Compton creamery (or any of them) other than Excluded Disputes, and that the Policy requires that any Employee who wishes to initiate or participate in formal proceedings to resolve any Covered Disputes must submit the claims or disputes to final and binding arbitration in accordance with the Policy.  I acknowledge, understand, and agree that (1) if any Covered Disputes exist or arise between me and the Company or Compton Creamery (or any of them), other than any Excluded Disputes, I am bound by the provisions, terms and conditions of the Policy which provides for mediation and mandatory final and binding arbitration of any Covered Disputes; (2) I am and will hereafter be deemed and treated as an 'Employee' as defined in the Policy for the purposes thereof, (3) there are no judge or jury trials of any Covered Disputes permitted

3

under the Policy, (4) I waive any right that I have or may have to a judge or jury trial of any Covered Disputes, (5) I waive any right that I have or may have to have any formal dispute resolution proceedings concerning any Covered Disputes take place in a local, state, or federal court or agency and to have such proceedings heard or presided over by an active local, state, or federal judge, judicial officer, or administrative officer, (6) all Covered Disputes must be heard, determined and resolved only by an Arbitrator through final and binding arbitration in accordance with the Policy, (7) the Company likewise agrees to mandatory final and binding arbitration of any Covered Disputes, whether initiated or participated in by me or by the Company, in accordance with the Policy, and (8) *I have received a copy of the Policy or one has been made available to me through the Company's Human Resource Manager, 2201 South Wilmington Ave,, Compton, CA 90220.*"  (Italics added.)

The above mentioned Arbitration Policy was not attached to the employment application and Cruise stated the Policy was not provided to her at the time she applied for employment.

On December 7, 2007, seven weeks after Cruise submitted the employment application, she was hired by Compton Creamery.  On April 1, 2012, her employment was terminated.

2.  *Proceedings*.

Cruise initially filed a discrimination complaint with the Department of Fair Employment & Housing, obtained a right to sue letter, and filed suit against the Kroger defendants.

The operative first amended complaint, filed August 30, 2012, alleged statutory causes of action pursuant to the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for retaliation, sexual harassment, sexual and racial discrimination, failure to investigate and prevent harassment and retaliation, as well as common law claims for wrongful termination in violation of public policy, intentional infliction of emotional distress and defamation.  The complaint also included a demand for a jury trial.

4

a. *Kroger's motion to compel arbitration*.

On November 29, 2012, the Kroger defendants filed a motion to compel arbitration and stay judicial proceedings. Kroger contended a valid agreement to arbitrate exists; Cruise was bound by the arbitration clause in the signed employment application and as well as by Kroger's four-page Arbitration Policy; Kroger was entitled to enforce the arbitration agreement; and the arbitration agreement extended to all of Cruise's claims against Kroger.

b. *Cruise's opposition to motion to compel arbitration*.

Cruise asserted she never signed an arbitration agreement with Kroger. The arbitration clause in the employment application was "vague," "brief" and unenforceable. As for the four-page Arbitration Policy on which Kroger also relied, that was merely an undated, unauthenticated page from a Ralphs handbook that was not provided to Cruise when she applied for the position. Cruise contended the failure to provide her with a copy of the Arbitration Policy meant that no contract was formed with respect to the undisclosed terms. (*Metters v. Ralphs Grocery Co*. (2008) 161 Cal.App.4th 696, 702 (*Metters*).)

Cruise further argued that even assuming the employment application and Arbitration Policy were properly presented to her, the federal district court in *Chavarria v. Ralphs Grocery Co*. (2011) 812 F.Supp.2d 1079 (*Chavarria*), already had reviewed said documents and found them to be unconscionable, both procedurally and substantively. The "take it or leave it" basis of the arbitration clause in the employment application rendered it procedurally unconscionable. Further, the instant Arbitration Policy's provisions relating to apportionment of fees and appointment of the arbitrator were substantively unconscionable pursuant to *Chavarria* as well as *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83 (*Armendariz*).

c. *Trial court's ruling*.

On January 25, 2013, the matter came on for hearing. On April 12, 2013, the trial court denied the motion to compel arbitration and set forth its rationale in an extensive written ruling, which stated, inter alia:

"The Defendants have failed to meet their burden to prove the existence of a signed arbitration agreement. *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696.[2]

"1. Defendants have failed to prove the existence of a written agreement to arbitrate. . . . .

"2. The defendants present Exhibit 'A' to the Snell declaration as the signed arbitration agreement. However, Exhibit 'A' to the Snell declaration consisted merely of pages from a Ralph's employee handbook. The Snell declaration does not state that this document was ever given to plaintiff. Plaintiff submits a declaration in opposition stating that she never received the Ralphs employee handbook. (See Cruise Declaration). *There is no date on the document and the Snell declaration does not state whether that document existed in 2007. . . .*

"B. The arbitration and employment policy submitted by Defendants is procedurally unconscionable. *Armendariz*[, *supra*,] 24 Cal. 4th 83 at 115.

"Kroger required Plaintiff to accept the 'available' Arbitration Policy not only as a condition of employment, but as a condition of Plaintiff' application for employment. Plaintiff could not even present herself for consideration without first acceding to the terms of the Policy. There is, therefore, no question that Kroger is the party of superior bargaining power. Indeed, describing Kroger's bargaining power here as simply 'stronger' than or 'superior' to Plaintiff's belies the total imbalance between the parties' relative positions. Kroger does not have merely superior or stronger bargaining power; it

---

**2**    In *Metters*, defendant Ralphs Grocery Co. moved to compel arbitration claiming the employee had entered into a binding arbitration agreement when he filled out a dispute resolution form. (161 Cal.App.4th at p. 698.) However, the dispute form failed to warn the employee that he was agreeing to binding arbitration. The dispute form, which was titled Notice of Dispute & Request for Resolution, "did not alert [the employee] he was agreeing to anything, let alone arbitration." (*Id*. at pp. 702-703.) *Metters* concluded substantial evidence supported the trial court's finding that there was no valid arbitration agreement. (*Id*. at p. 704.)

has all of the bargaining power. *Chavarria v Ralphs Grocery Co*. (2011) 812 F.Supp.2d 1079, 1085, 1086).

" 'Accordingly, because the Policy was presented as 'take it or leave it,' the Policy is procedurally unconscionable. Additionally, because the Plaintiff was not given the opportunity to review the full Policy before she was hired, this additional defect acts to 'multiply' the degree of procedural unconscionability. [D]efendants' failures, including failure to supply the plaintiff with the full terms of the binding arbitration process, 'multiply the degree of procedural unconscionability of the ADR agreements'). (*Chavarria* at 1085 and 1086) [Citation.]

"C. *The arbitration and employment policy is substantially unconscionable*: *Chavarria v. Ralphs Grocery Co*. (2011) 812 F.Supp.2d 1079

"1. The Policy's provisions regarding the eligibility of potential arbitrators also raise fundamental unconscionability concerns.

"Under the terms of the Policy, paragraph 7, 'the "Qualified Arbitrator" must be a retired state or federal judge,' . . . 'and neither the American Arbitration Association ('AAA') nor the Judicial Arbitration & Mediation Services ('JAMS') will be permitted to administer any arbitration held under or pursuant to this Arbitration Policy.' . . . .

"By eliminating the ability of an institutional arbitrator to serve, Kroger eliminates any uncertainty concerning the selection of the ultimate arbitrator. The AAA, for example, has its own process for selecting a neutral arbitrator when the parties disagree. Further, institutional arbitrators are less likely to be influenced by a well-paying repeat party, such as Kroger, than are hand-picked individual arbitrators who stand to benefit from Kroger's frequent patronage. In short, the Policy's restrictions mandating private, individual arbitrators outside the AAA and JAMS organizational framework, coupled with the arbitration selection 'process,' ensure that the arbitrator will be a person selected by Kroger.' (*Chavarria* at 1086)

"2. 'These consequences are compounded by the fact that under paragraph 10 of Ralphs' (Krogers) Arbitration Policy, the arbitrator apportions the arbitration and arbitrator's fees between the parties at the outset of the arbitration proceedings and before

7

the introduction of evidence, regardless of the merits of the claim. The default allocation is a fifty-fifty fee split. In the event of a dispute regarding the apportionment of fees (which is almost universally the case), the arbitrator is empowered to resolve the dispute only if there is settled and controlling United States Supreme Court authority requiring a particular resolution. Authority from any other court, no matter how relevant, is barred from consideration. In the absence of a specific United States Supreme Court mandate for a particular resolution, the arbitrator 'will' divide the fees equally between the parties.' *Chavarria* at 1087 [¶] . . . [¶]

"5. The fee provision which requires plaintiff to pay 50 percent up front for the arbitration is unconscionable based on *Armendariz*[*, supra*,] 24 Cal. 4th 83 at 110,111: 'Consistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she was free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.'

"D. Pursuant to Code of Civil Procedure § 1281.2(c), the Court may, in its discretion, refuse to compel arbitration where there is 'is a possibility of conflicting rulings on a common issue of law or fact.' Code of Civil Procedure § 1281.2(c); *Fitzhugh v. General Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th [469,] 475. [¶] The existence of multiple defendants, including the individual alleged to be a harasser who is not a party to the mediation/arbitration policy presents a possibility of unnecessary doubling of resources and the possibility of conflicting rulings.

"Therefore, the Defendants' Petition to Compel Arbitration and Stay the Action is Denied."

This timely appeal followed.

8

## CONTENTIONS

Kroger contends: the Federal Arbitration Act (FAA) governs the instant arbitration agreement; California and federal law favor arbitration; the trial court erred as a matter of law in holding that no valid contract to arbitrate exists, in that Cruise expressed her assent to the terms of the Arbitration Policy by her initials and signature on the employment application, the Arbitration Policy was properly incorporated by reference, and Cruise is charged with knowledge of the terms of the Arbitration Policy and is deemed to have assented thereto; the trial court erred in ruling the Arbitration Policy was procedurally and substantively unconscionable; the trial court should sever any offending provisions and order arbitration; Cruise must arbitrate against all of the defendants; and the trial court proceeding should be stayed pending arbitration.

## DISCUSSION

1. *The undisputed evidence establishes the parties agreed to arbitrate their employment disputes.*

Under "both federal and state law, *the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.*" (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, italics added).)

The instant employment application, which was signed by Cruise, contained the following provision, which Cruise separately initialed, and which stated in relevant part: "MANDATORY FINAL & BINDING ARBITRATION: *I acknowledge and understand that the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy (the 'Policy') applicable to all employees and applicants for employment . . . . I acknowledge, understand and agree that the Policy is incorporated into this Employment Application by this reference as though it is set forth in full, . . . the Policy applies to any employment-related disputes that exist or arise between Employees and the Company . . . and that the Policy requires that any Employee who wishes to initiate or participate in formal proceedings to resolve any Covered Disputes must submit the claims or disputes to final and binding arbitration in accordance with the Policy.*" (Italics added.)

9

The above language eliminates any argument the parties did not agree to arbitrate their employment-related disputes.

Further, in view of the above provision, Cruise cannot contend her claims against Kroger fall outside the scope of arbitrable issues. " 'In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.' " (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315.) Cruise's statutory causes of action against Kroger pursuant to FEHA (Gov. Code, § 12900 et seq.) for retaliation, sexual harassment, sexual and racial discrimination, failure to investigate and prevent harassment and retaliation, as well as her common law claims for wrongful termination in violation of public policy, intentional infliction of emotional distress and defamation, are all "employment-related disputes" and therefore clearly are covered disputes subject to the arbitration agreement.

Thus, there is no question the parties agreed to arbitrate their employment-related disputes, and that Cruise's claims against Kroger fall within the ambit of the arbitration agreement. Therefore, Kroger is entitled to enforce the agreement to arbitrate.

2. *The impact of the trial court's finding that Kroger failed to establish the precise terms of the Arbitration Policy.*

Kroger's moving papers were supported by the declaration of Savarda Kia Snell, Human Resource Manager for Compton Creamery. The Snell declaration, dated November 28, 2012, provided in relevant part at paragraph 3: "Attached hereto as Exhibit A is a true and correct copy of the Mediation & Binding Arbitration Policy (referred to in Defendants' Memorandum of Points and Authorities as the 'Arbitration Policy')." Exhibit A to the Snell declaration consisted of a four-page document captioned "RALPHS GROCERY COMPANY [¶] DISPUTE RESOLUTION PROGRAM [¶] MEDIATION & BINDING ARBITRATION POLICY." Kroger asserted said document was a copy of the operative Arbitration Policy which was incorporated by reference into the employment application which Cruise executed five years earlier, on October 20, 2007.

10

However, the trial court was not persuaded the undated four-page arbitration policy attached to the Snell declaration was extant at the time Cruise read and signed the employment application, and that it was the same Arbitration Policy to which the employment application referred.

*Nonetheless,* Kroger's inability to establish the precise language of the Arbitration Policy which was in effect at the time of Cruise's hiring in 2007, does not support the trial court's conclusion that found Kroger "failed to prove the existence of a written agreement to arbitrate." The undisputed evidence, specifically, the employment application, is sufficient to establish the existence of a written agreement to arbitrate the employment-related disputes pled herein by Cruise. Therefore, Kroger's inability to establish the precise terms of the Arbitration Policy does not relieve Cruise of the obligation to arbitrate.

The only impact of Kroger's inability to establish the contents of the 2007 Arbitration Policy is that Kroger failed to establish the parties agreed to govern their arbitration by procedures different from those prescribed in the CAA (§ 1280 et seq.). Unless the parties otherwise agree, the conduct of an arbitration proceeding is controlled by the CAA. (See, e.g., 1281.6, §§ 1282, 1282.2.) Here, because Kroger failed to establish an agreement to the contrary, the instant arbitration proceeding is to be governed by the procedures set forth in the CAA. Because this arbitration is controlled by California statutory and case law, Cruise's arguments that Kroger's Arbitration Policy is procedurally and substantively unconscionable are meritless.[3]

---

[3] An employer may lawfully require compulsory arbitration of disputes as a condition of employment. (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1122-1123.) With respect to appointment of the arbitrator, section 1281.6 provides that where the parties' arbitration agreement fails to provide a method of appointing an arbitrator, the method prescribed in section 1281.6 shall control. (See *HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 110, 1107 [parties need not agree upon a specific method for appointing an arbitrator to form a binding arbitration agreement].) Finally, with respect to apportionment of costs, *Armendariz* held "a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA

11

Nothing herein should be construed as enabling an employer to enforce a missing arbitration agreement. We merely hold the language of the arbitration clause in the instant employment application, standing alone, was sufficient to establish an agreement by the parties to arbitrate employment-related disputes. While the parties' agreement to arbitrate is enforceable, the employer's inability to establish the contents of its Arbitration Policy precludes the employer from enforcing the provisions of said policy. Instead, the arbitration proceeding is to be conducted in accordance with the procedures set forth in the CAA as well as applicable case law.

## DISPOSITION[4]

The order denying the motion to compel arbitration and stay the action is reversed with directions to grant the motion. The parties shall bear their respective costs on appeal.

**CERTIFIED FOR PUBLICATION**

ALDRICH, J.

I concur:

KLEIN, P. J.

---

claims impliedly obliges the employer to pay all types of costs that are unique to arbitration." (24 Cal.4th at p. 113.)

[4] Due to the unavailability of the third member of the panel which heard this matter, this opinion is being filed with the concurrence of the two remaining members of the panel. (Cal. Const., art. VI, § 3 ["Concurrence of 2 judges present at the argument is necessary for a judgment"]; see, e.g., *People v. Castellano* (1978) 79 Cal.App.3d 844, 862.)